Case 2:16-cv-00459   Document 3   Filed in TXSD on 11/22/16   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
November 25, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | Cr. No. 2:14-455 |
| | § | (Ca. No. 2:16-459) |
| GERARDO ESTEBAN BEDORE | § | |

**MEMORANDUM OPINION AND ORDER**

Gerardo Esteban Bedore filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and a memorandum in support. D.E. 79, 80. His motion challenges this Court's denial of a minor role adjustment at sentencing. The Court has reviewed the motion and concludes that summary dismissal is appropriate because "it plainly appears from the motion . . . and the record of prior proceedings that the moving party is not entitled to relief. . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts (2016) (2255 Rules).

**I.    PROCEDURAL HISTORY**

Bedore pled guilty to possession with intent to distribute approximately 10.78 kilograms of methamphetamine pursuant to a plea agreement in 2014. He was sentenced in April 2015, by which time the Application Notes to the Sentencing Guidelines had already been amended to clarify the factors a district court should consider in making a determination of minor or mitigating role.[1] *See* Amendment 794. As a result of that change, Bedore's counsel urged application of minor role at sentencing, which would have changed his sentencing guideline range from 168 to 210 months' imprisonment to 70 to 87 months. The Court heard testimony

---

1. Amendment 794 became effective on November 1, 2015, and was applicable at the time of Bedore's sentencing hearing.

1

from the case agent before deciding that Bedore did not fit the criteria for minor or mitigating role, but due to other factors, sentenced him well below the guideline range. The Court sentenced Bedore to 84 months' imprisonment. Bedore appealed, but moved to dismiss his appeal. He then filed the present motion a month later. It is timely.

## II. MOVANT'S CLAIMS

Bedore's motion challenges the voluntariness of his plea agreement and the waiver of his right to file a § 2255 motion. He next claims that the Court failed to consider a minor role adjustment, which is a violation of Equal Protection, and that Amendment 794 is retroactive.

## III. ANALYSIS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Involuntary Plea or Waiver

Bedore argues that his guilty plea was involuntary on several grounds. But, he waived his right to collaterally challenge his sentence pursuant to the terms of his plea agreement:

> Additionally the defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant knowingly and

2

>   voluntarily waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

D.E. 22, ¶ 7. Bedore argues that he did not understand what a collateral challenge was and therefore did not understand his waiver or the many ways in which the waiver limited his ability to challenge his sentence. Yet, during rearraignment, the Court reviewed the plea agreement with Bedore:

>   Mr. Bedore, I'm going to ask you some questions about this plea agreement. The first question I always ask is to make sure that you signed it without anybody coercing or forcing you to.
>   Did you sign it voluntarily?
>   THE DEFENDANT: Yes, sir.
>   THE COURT: All right. Did you read it before you signed it?
>   THE DEFENDANT: Yes, sir.
>   THE COURT: Did you discuss it with Mr. Morales?
>   THE DEFENDANT: Yes, sir.
>   THE COURT: Did he answer any questions you might have about the agreement?
>   THE DEFENDANT: Yes, sir.
>   THE COURT: Do you feel like you understand the terms of the agreement?
>   THE DEFENDANT: I do, sir.
>   THE COURT: Has anyone offered you or made any promises to you to get you to plead guilty this afternoon other than those contained in this agreement?
>   THE DEFENDANT: No, sir.
>   THE COURT: On page 3 in paragraph 7, there is a waiver of certain rights to appeal.
>   Were you aware of that before you signed it?
>   THE DEFENDANT: Yes, sir.
>   THE COURT: Did you discuss this waiver with Mr. Morales?
>   THE DEFENDANT: Yes, sir, I did.
>   THE COURT: Were you aware that by signing this agreement you not only waived your right to directly appeal your conviction and your sentence but you also waived the right to collaterally attack it under 28, United States Code, Section 2255?
>   THE DEFENDANT: I do, sir.

> THE COURT: Do you feel like you understand the waiver
> and how it may affect your rights?
> THE DEFENDANT: Yes, sir, I do.
> THE COURT: Do you have any questions you want to ask
> me about it?
> THE DEFENDANT: No, sir.

D.E. 70, pp. 5-6. In addition, the Court advised Bedore of the maximum punishment for his offense:

> THE COURT: You're pleading to -- will be pleading to
> a methamphetamine case -- charge, excuse me; and based on the
> quantity involved, the penalty range is not less than ten years
> up to life in prison. You could be fined up to $10 million.
> You'll be placed on supervised release for, at least, five
> years. There is a $100 special assessment that will be imposed,
> and there is a provision for community restitution up to the
> amount of any fine imposed by the Court.
> Do you understand that that is the penalty range
> for your offense?
> THE DEFENDANT: Yes, sir, I do.

*Id*., pp. 6-7. Bedore was advised by the Court of the process of sentencing:

> THE COURT: Mr. Bedore, I'm going to sentence you
> several weeks from now; and before I do that, before I sentence
> you, I will have a presentence investigation report prepared by
> a probation officer. It will be prepared in accordance with the
> United States Sentencing Guidelines.
> Have you discussed those guidelines with
> Mr. Morales and how they may apply to you?
> THE DEFENDANT: Yes, sir, I have.
> THE COURT: Once the report has been prepared, it will
> be delivered to your lawyer who will bring it to your attention.
> I always suggest that you read it yourself. If not, be sure he
> reads it to you carefully and point out any mistakes that you
> believe are in the report.
> If necessary, Mr. Morales will file any
> objections for you. I will rule on any unresolved objections at
> your sentencing hearing; and once I've done that, an advisory
> guideline range will be established for your case subject to any
> minimum mandatory that might apply. There is no parole in the
> federal system.
> And finally, if the sentence I give you is worse
> than you're expecting, you're not going to be allowed to change

>	your mind and withdraw your plea of guilty for that reason.
>	Do you understand everything I've said so far
>	about sentencing?
>	THE DEFENDANT: I understand, sir.

*Id.*, pp. 7-8.

The Court reviewed Bedore's trial rights and the elements of his offense. Bedore testified that he understood the elements of the offense and pleaded guilty. *Id.*, pp. 9, 12. The government outlined the facts it would prove at trial. Bedore agreed with the government's factual recitation. *Id.*, pp. 10-12.

Bedore's testimony during rearraignment contradicts his claim that he did not understand his plea agreement and did not voluntarily waive his right to collaterally attack his sentence. His statements under oath are entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). Bedore's testimony that he understood the waiver is all that is required for his waiver to be enforceable. *See United States v. Wilkes*, 20 F.3d 650, 653 (5th Cir. 1994). Bedore's sworn testimony precludes his claim that his plea was involuntary and unknowing. The Court enforces his waiver, which precludes consideration of the merits of his claims.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253 (c)(1)(A). Although Bedore has not yet filed a notice of appeal, the § 2255 Rules instruct

this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

The Court finds that Bedore cannot establish at least one of the *Slack* criteria. Accordingly, he is not entitled to a COA as to his claims.

**V.  CONCLUSION**

Bedore's motion to vacate, set aside, or correct sentence (D.E. 79) is **DENIED** pursuant to Rule 4(b) and he is **DENIED** a Certificate of Appealability.

It is so **ORDERED**.

**SIGNED** this 22nd day of November, 2016.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE